IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELVIN MARINKOVIC,           :

     Plaintiff,           :

v.                           :   Civil Action No. GLR-14-3069

LAYLA VASQUEZ,[1] et al.,    :

     Defendants.          :

**MEMORANDUM OPINION**

Pending before the Court is Defendants', Mike Huntemann, Layla Vasquez, Ryan Watkins,[2] Diana Rosemond, and John Oliveira[3] (collectively, "Moving Defendants"), Motions to Dismiss Plaintiff's, Melvin Marinkovic, Amended Complaint or, in the Alternative, for Summary Judgment (ECF Nos. 17, 29) and Supplement to Defendants Huntemann, Vasquez, Watkins, and Rosemond's Motion to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment (ECF No. 23). Marinkovic, acting pro se, has filed a series of motions including a Motion for Clerk's Entry of Default (ECF No. 26); Motion to Strike Motions of Defendants (ECF No. 27); Motion/Suggestion for Recusal (ECF No. 28); Motion to Amend Complaint (ECF No. 33); and Motion to Strike Defendant Oliveira's Motion to Dismiss (ECF No. 42). Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. _See_

---

[1] Incorrectly identified and named as Lola Vasques.
[2] Incorrectly identified and named as Kyle Watkins.
[3] Mr. Oliveira joined Defendants Huntemann, Vasquez, Watkins, and Rosemond's Motion to Dismiss Amended Complaint by adopting and incorporating all the arguments set forth therein. (_See_ ECF No. 29).

Local Rule 105.6 (D.Md. 2014).  For the reasons outlined below, Marinkovic's Motion to Amend Complaint will be granted in part and denied in part; and his Motion for Clerk's Entry of Default, Motion/Suggestion for Recusal, Motion to Strike Defendant Oliveira's Motion to Dismiss, and Motion to Strike Motions of Defendants will be denied.  The Moving Defendants Motions to Dismiss will be granted.

## I. BACKGROUND

### A.   Factual Background

In February 2014, Defendant Falck EMS Holdings, Inc. ("Falck") hired Marinkovic as an Emergency Medical Technician ("EMT"). Marinkovic reported directly to Layla Vasquez, who provided Plaintiff with his assignments and work schedule.  Since the beginning of his employment, Marinkovic believed Vasquez treated his female coworkers more favorably.  Marinkovic complains that Vasquez permitted females to sit in their personal automobiles to wait for their assignments, while male employees had to wait in the break room; personally provided uniforms to females, but required male employees to get their uniforms from the Operations Manager; and required males employees to use a computer to log patient runs while females employees were allowed to submit paper records.

Further, Marinkovic alleges, in the summer of 2014, Vasquez directed him to drive an ambulance, which he believed had a carbon monoxide leak.  After Marinkovic advised Vasquez that he would

2

contact her supervisor, Mr. Huntemann, to report a problem with the vehicle, Vasquez provided Marinkovic with a different ambulance. As a result of this incident, Marinkovic filed a complaint with Falck, the Equal Employment Opportunity Commission ("EEOC"), and the Federal Occupational Safety and Health Act ("OSHA") alleging unequal treatment by Vasquez with respect to her initial denial of allowing him to drive a different ambulance.

In response to Marinkovic's complaint against Vasquez, Diana Rosemond, a Falck human resources representative, conducted an investigation by interviewing all of the male and female EMTs to determine if Marinkovic's allegations could be substantiated. Marinkovic objected to the methods of the investigation because he alleges, as a result of his name being revealed, he was ostracized from the other EMTs after the investigation was complete.

Additionally, on September 26, 2014, Marinkovic left his personal cell phone in an ambulance.  He eventually retrieved the phone from the next shift manager.  Marinkovic alleges Vasquez sabotaged and damaged his phone requiring him to get a replacement.  Finally, in October 2014, Marinkovic chose to resign partly due to reduced hours.

## I. Discussion

### A.   Procedural Posture

On September 29, 2014, Marinkovic filed a Complaint naming Falck A/S, Falck EMS Holdings, and Vasquez as defendants. (ECF No.

3

1).  On October 15, 2014, the Court granted Marinkovic's Motion for Leave to Proceed in Forma Pauperis, and directed him to return to the Clerk the Marshal forms and summonses within twenty-one days from the date of the Order, so the U.S. Marshal could effectuate service of process on Defendants.  (See ECF No. 3). Simultaneously, on October 15, 2014, Marinkovic filed a First Amended Complaint adding Defendants Mike Huntemann, Kirkbi, Allan Larsen, John Oliveira, Soren Vuurst, Morton Pederson, Diana Rosemond, The Lundeck Foundation, and Ryan Watkins.  (First Am. Compl., ECF No. 6).  The First Amended Complaint alleges sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-16 et seq. (2012) (Count I), retaliation in violation of the Surface Transportation Assistance Act ("STAA"), 49 U.S.C. § 31105 (2012) (Count II), retaliation in violation of Title VII (Count III), Constructive Discharge (Count IV), Deliberate Failure to Supervise (Count V), Negligent Failure to Supervise (Count VI), Tortious Interference with Economic Relations (Count VII), Tortious Interference with Prospective Advantage (Count VIII), and Conversion (Count IX).  (See First Am. Compl.).  On November 6, 2014, the Clerk issued Summonses as to Huntemann, Oliveira, Rosemond, Vasquez, and Watkins.  Marinkovic filed proof of service as to Huntemann, Rosemond, Vasquez, and Watkins.  (ECF No. 8).  To date, the Court has no record that Marinkovic returned to the Clerk

4

summonses for, or filed proof of service, as to the remaining Defendants.[4]

On January 6, 2015, Huntemann, Rosemond, Vasquez, and Watkins filed a Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Summary Judgment. (ECF No. 17).   The Court extended Marinkovic's deadline for responding to the Motion until March 17, 2015.   (ECF No. 22).   On February 20, 2015, Huntemann, Rosemond, Vasquez, and Watkins filed a Supplemental Motion to Amend/Correct Motion to Dismiss for Failure to State a Claim or, in the Alternative, For Summary Judgment seeking to clarify their position that Count II of the Amended Complaint is not viable. (ECF No. 23).   On March 30, 2015, Marinkovic moved to Strike the Motions of Defendants on the basis that they are (1) untimely; (2) premature; and (3) simply gamesmanship.   (See ECF No. 27).

In ruling on a Motion to Supplement, "leave should be freely granted, and should be denied only where 'good reason exists . . ., such as prejudice to the [opposing party].'" Reyazuddin v. Montgomery Cnty., Md., No. DKC 11-0951, 2012 WL 5193837, at *3 (D.Md. Oct. 18, 2012) (first alteration in the original) (quoting Franks v. Ross, 313 F.3d 184, 198 n.15 (4th Cir. 2002)).   Here, the

---

[4] "It is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or default judgment may be entered against a defendant." Turner v. Lowden, No. RDB-12-1372, 2013 WL 5634325, at *4 (D.Md. Oct. 15, 2013), aff'd, 559 F.App'x 227 (4th Cir. 2014), cert. denied, 135 S. Ct. 1400 (2015) (quoting Md. State Firemen's Ass'n v. Chaves, 166 F.R.D. 353, 354 (D.Md. 1996)).   Accordingly, Marinkovic's Motion

Supplement does not provide any additional basis for the Motion to Dismiss, but merely provides clarification that the Moving Defendants are supporting their Motion in favor of dismissing Count II on both criteria for the hazardous materials element under the STAA. (See ECF No. 23). Moreover, the Moving Defendants filed their Supplement on February 20, 2015, and sent a copy to Marinkovic by regular and certified mail. (See id. at 2). Marinkovic, therefore, had an additional twenty-two days to oppose the Motion. (See ECF No. 22) (extending Marinkovic's deadline for responding to the Motion to Dismiss or, in the Alternative, for Summary Judgment until March 17, 2015); see also Fed.R.Civ.P. 6(d) (adding three days after the period to respond would otherwise expire, when service is made by mail).

Finally, the Motion for Summary Judgment is not premature. "When matters outside the pleading are presented to and not excluded by the court, [a 12(b)(6) motion to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(d)) (internal quotation marks omitted). The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion. First, the "parties [must] be given some indication by the court that it is treating the

---

for Clerk's Entry of Default will be denied.

12(b)(6) motion as a motion for summary judgment;" and, second, "the parties [must] be afforded a reasonable opportunity for discovery." Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985)) (internal quotation marks omitted).

Here, the alternative caption of the Moving Defendants' Motion and the attached Declaration are sufficient indicia that the Motion might be treated as one for summary judgment. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). Once notified, however, "summary judgment is appropriate only after 'adequate time for discovery.'" Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Marinkovic argues consideration of summary judgment is premature because he has not been afforded an opportunity to engage in discovery.

Rule 56(d) (formerly Rule 56(f)) provides that the Court may deny or continue a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . . ." Fed.R.Civ.P. 56(d) (emphasis added). A party opposing summary judgment under Rule 56(d), however, may not simply assert that discovery is necessary; the party must file an affidavit that "particularly specifies legitimate needs for further discovery."

7

Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995).  "[T]he failure to file an affidavit under Rule [56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate."  Id. (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994)) (internal quotation marks omitted).  Marinkovic has failed to present to the Court an affidavit particularly specifying the reasons that discovery is necessary.  For these reasons, Marinkovic's Motion to Strike Motions of Defendants will be denied.

Further, on March 30, 2015, Marinkovic filed a Motion/Suggestion for Recusal.  (ECF No. 28).  Marinkovic's Motion/Suggestion for Recusal is based entirely on his subjective belief that certain rulings were not favorable to him.  (See id.). To succeed on a Motion for Recusal, the alleged bias or prejudice "must, as a general matter, stem from 'a source outside the judicial proceeding at hand.'"  Belue v. Leventhal, 640 F.3d 567, 572–73 (4th Cir. 2011) (citing Liteky v. United States, 510 U.S. 540, 545 n.1 (1994)).  Prior judicial rulings, on their own, "almost never constitute a valid basis for a bias or partiality motion."  United States v. Lentz, 524 F.3d 501, 530 (4th Cir. 2008) (internal quotation marks omitted) (citing Liteky, 510 U.S. at 555).  Accordingly, recusal is neither warranted nor appropriate, and Marinkovic's Motion/Suggestion for Recusal will be denied.

On April 1, 2015, Defendant John Oliveira filed a Motion to

Dismiss Amended Complaint or, in the Alternative, for Summary Judgment adopting and incorporating the arguments set forth by Huntemann, Vasquez, Watkins, and Rosemond. (ECF No. 29). On May 21, 2015, Marinkovic filed a Motion to Strike Oliveira's Motion to Dismiss on the basis that Oliveira's Motion was filed out of time.
 As discussed above, however, Marinkovic has failed to file proof of service as to Oliveira. "[T]he court has no jurisdiction [over a defendant] until . . . service is properly accomplished, or is waived by a voluntary appearance by the defendant, either personally or through a duly authorized attorney." Trademark Remodeling, Inc. v. Rhines, 853 F.Supp.2d 532, 538 (D.Md. 2012) (alteration in the original) (quoting Flanagan v. Dep't of Human Res., 989 A.2d 1139, 1143 (Md. 2010)). Nevertheless, Oliveira filed a responsive pleading to expeditiously move towards a resolution in this matter.[5]  Accordingly, Oliveira's Motion to Dismiss, or in the Alternative, for Summary Judgment is timely and Marinkovic's Motion to Strike Oliveira's Motion to Dismiss will be denied.

On April 6, 2015, Marinkovic filed a Motion to Amend Complaint. (ECF No. 33). Under Federal Rule of Civil Procedure 15(a), "[t]he court should freely give leave [to amend a complaint] when justice so requires." Fed.R.Civ.P. 15(a)(2). It is within the Court's discretion to deny leave to amend, however, where the

---

[5] Oliveira reserves the defense of personal jurisdiction.

proposed amendment would be futile.   Elrod v. Busch Entm't Corp.,
479 F.App'x 550, 551 (4th Cir. 2012).   An amendment is futile where
the complaint, as amended, cannot withstand a motion to dismiss.
Id. (citing Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471
(4th Cir. 2011)).

Here, on November 14, 2014, the Court denied Marinkovic's
Motion to Stay (ECF No. 5), in which he voluntarily notified the
Court that he had not yet exhausted the administrative process
concerning his claims under Title VII.   (See ECF No. 9).   Upon
finding that Marinkovic's Title VII claims were outside the
jurisdiction of the Court, Counts I and III were struck from the
Amended Complaint (ECF No. 6) without prejudice to Marinkovic's
ability to refile his charge after a Right to Sue Letter issued.
On March 12, 2015, Marinkovic filed a timely Notice of Right to
Sue.   (ECF No. 25).   Thereafter, Marinkovic filed his Motion to
Amend Complaint reasserting his Title VII claims, adding a cause of
action based on defamation (Count X), and adding MedStar Health as
a Defendant in this matter. (See Proposed Second Am. Compl., ECF
No. 33-1).   The Motion to Amend Complaint will be granted in part
and denied in part.

The Motion to Amend will be granted to the extent Marinkovic
attempts to reassert his Title VII claims (Counts I and III), adds
MedStar Health as a Defendant,[6] and adds supporting factual

---

[6] The Clerk is Directed to add MedStar Health to the docket.

allegations with respect to Counts I through IX.   The proposed Second Amended Complaint will be denied to the extent it purports to state a claim for defamation (Count X). (See Proposed Second Am. Compl. at 49-54).

Specifically, Count X alleges Watkins falsely testified, during a Maryland Department of Labor, Licensing and Regulation ("DLLR") hearing, that Marinkovic was terminated from employment due to misuse of a company ambulance; and Huntemann falsely testified, during the same DLLR hearing, that Marinkovic was charged with "serious misconduct" with respect to a patient's care.

Under Maryland law, to state a claim for defamation, a plaintiff must show that "(1) the defendant published a defamatory statement to a third person; (2) the statement was false; (3) Defendants were legally at fault for making the statement; and (4) Plaintiff suffered harm."   Ali v. Giant Food LLC/Stop & Shop Supermarket Co., LLC, 595 F.Supp.2d 618, 622 (D.Md. 2009) (citing Woodruff v. Trepel, 725 A.2d 612 (Md.Ct.Spec.App. 1999)).   Even where these elements are established, however, a defendant is entitled to absolute privilege for "statements made during the course of judicial and quasi-judicial proceedings." Alford v. Genesis Healthcare, No. RDB-05-3278, 2007 WL 1073725, at *5 n.4 (D.Md. Apr. 9, 2007) (citing Gohari v. Darvish, 767 A.2d 321, 328 (Md. 2001)).

Absolute privilege applies only to certain types of

administrative proceedings that satisfy the two part test of <u>Gersh</u> <u>v. Ambrose</u>, 434 A.2d 547 (Md. 1981).  The two factors to be considered are "(1) the nature of the public function of the proceeding and (2) the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements." <u>Gersh</u>, 434 A.2d at 552.  In applying the <u>Gersh</u> factors, this Court has already concluded that the nature of the DLLR proceeding is to make "adjudicative decisions between adverse parties," <u>Dukes v.</u> <u>Maryland</u>, No. CCB-11-876, 2011 WL 4500885, at *6 (D.Md. Sept. 27, 2011), and that "there are adequate procedural safeguards in the DLLR process to merit a finding of quasi-judicial immunity," <u>id.</u> at *7. Accordingly, the Court concludes that the statements made by Watkins and Huntemann during the DLLR hearing are protected by absolute privilege. Because the proposed Count X to the Second Amended Complaint does not state a viable cause of action, the Court will deny the Motion to Amend as to Count X.

The decision to grant in part Marinkovic's Motion to Amend, however, will not moot the pending Motions to Dismiss or, in the Alternative, for Summary Judgment.  When a plaintiff files an amended complaint, it generally moots any pending motions to dismiss because the original complaint is superseded.  <u>See</u> <u>Pac.</u> <u>Bell Tel. Co. v. Linkline Commc'ns, Inc.</u>, 555 U.S. 438, 456 n.4 (2009) ("Normally, an amended complaint supersedes the original complaint."). Where "some of the defects raised in the original

motion remain in the new pleading, [however,] the court simply may consider the motion as being addressed to the amended pleading.  To hold otherwise would be to exalt form over substance." <u>Buechler v. Your Wine & Spirit Shoppe, Inc.</u>, 846 F.Supp.2d 406, 415 (D.Md. 2012) (quoting 6 Charles Alan Wright et al., Federal Practice & Procedure § 1476 (3d ed. 2010)) (internal quotation marks omitted). Here, none of Marinkovic's proposed changes materially affect the Moving Defendants' Motion.  As a result, the Court will consider the Motions to Dismiss as addressing Marinkovic's Second Amended Complaint.

Having now sorted out the procedural posture of this case, the Court will consider the merits of the Moving Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

**B.   Standard of Review**

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 563 (2007); <u>see</u> Fed.R.Civ.P. 12(b)(6).  "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Presley v. City of Charlottesville</u>, 464 F.3d 480, 483 (4th Cir. 2006) (alterations omitted)(quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)) (internal

quotation marks omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  A complaint is also insufficient if it relies upon "naked assertion[s] devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (alteration in the original) (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 556.  "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  Although documents "filed pro se [are] to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976))

14

(internal quotation marks omitted), the requirements of liberal construction do not mean that the Court can ignore a clear failure in the pleadings to allege facts establishing a federal claim, <u>see</u> <u>Weller v. Dep't of Soc. Servs.</u>, 901 F.2d 387, 391 (4th Cir. 1990).

"When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 260-61 (4th Cir. 1998) (alteration in original) (quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted).   Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.   Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970)).   Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.   <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).   "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

15

that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson</u>, 477 U.S. at 247-48 (alteration in original).

A "material fact" is one that might affect the outcome of a party's case.  <u>Id.</u> at 248; <u>see also</u> <u>JKC Holding Co. v. Wash. Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001) (citing <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson</u>, 477 U.S. at 248; <u>accord</u> <u>Hooven-Lewis</u>, 249 F.3d at 265.

**B.  <u>Analysis</u>**

**1.  Discrimination and Retaliation in Violation of Title VII (Counts I and III)**

Counts I and III of the Second Amended Complaint allege gender based discrimination and retaliation in violation of Title VII respectively.  Counts I and III fail as to the Individual Defendants because an individual cannot be held liable under Title VII.

Title VII provides that "[i]t shall be an unlawful employment practice for an <u>employer</u> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin." 42 U.S.C. § 2000e- 2(a) (emphasis added).

"Employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person." 42 U.S.C. § 2000e(b). The use of the term "agent" serves only to establish respondeat superior liability upon the employer for the acts of authorized supervisors.  See Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998) (stating that "the inclusion of agent in Title VII's definition of employer simply . . . establish[es] a limit on an employer's liability for its employees' actions").  Moreover, the Fourth Circuit has held that an employer's agents "are not liable in their individual capacities for Title VII violations." Id.  None of the individually named Defendants, therefore, can be held liable for employment discrimination or retaliation under Title VII. Accordingly, Counts I and III will be dismissed with prejudice as to all of the Individual Defendants.[7]

### 2.   Retaliation in Violation of the STAA (Count II)

Count II of the Second Amended Complaint alleges retaliation in violation of the STAA.  Count II fails as to all Defendants because Marinkovic has failed to allege that he engaged in a protected activity as required under the statute.

---

[7]   As discussed above, Defendants Allan Larsen and Morton Pederson have not been served with the Amended Complaint. Nevertheless, because an individual cannot be held liable for employment discrimination or retaliation under Title VII, Marinkovic's Title VII claims fail as a matter of law against all

The STAA makes it illegal to retaliate against an employee for refusing to operate a commercial vehicle because "the employee has a reasonable apprehension of serious injury to [himself] or the public because of the vehicle's unsafe condition." 49 U.S.C. § 31105(a)(1)(B)(ii) (the "Refusal to Drive Clause").  To establish a claim under the Refusal to Drive Clause, a plaintiff must show that "(1) he engaged in protected activity, (2) his employer took adverse employment action against him, and (3) there is a causal relationship between his protected activity and the adverse employment action." Calhoun v. U.S. Dep't of Labor, 576 F.3d 201, 209 (4th Cir. 2009) (citing Yellow Freight Sys., Inc. v. Reich (Yellow Freight II), 27 F.3d 1133, 1138 (6th Cir. 1994)).

Here, Marinkovic alleges his supervisor directed him to drive "Ambulance 159" for a patient run.  Marinkovic, however, refused to operate the vehicle based on his understanding that Ambulance 159 was unsafe because there was a carbon monoxide leak.  After ultimately providing Marinkovic with another ambulance to drive, Marinkovic claimed that Vasquez retaliated against him for refusing to drive Ambulance 159.  The Defendants argue Marinkovic cannot show that he engaged in a protected activity because the ambulance Marinkovic refused to drive was not a "commercial motor vehicle" under the statutory and regulatory definition.

The STAA defines a "commercial motor vehicle" as:

individual Defendants.

a self-propelled or towed vehicle used on the highways in commerce principally to transport passengers or cargo, if the vehicle—

(A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater;

(B) is designed to transport more than 10 passengers including the driver; or

(C) is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103.

49 U.S.C. § 31101(1) (2012).

The undisputed record evidence establishes that Ambulance 159 does not meet any of the specifications or requirements defining a "commercial motor vehicle." (See Beauchesne Aff. ¶¶ 5-7, Ex. 2, ECF No. 17-3). This ambulance weighs only 9,400 pounds, seats approximately six individuals (see id.), and does not transport any hazardous material nor a sufficient quantity of hazardous materials to require placarding under the statute. (See Beauchesne Aff. ¶ 7, Ex. A, ECF No. 23-1). Thus, Marinkovic cannot, as a matter of law, assert a viable claim under the STAA. Accordingly, Count II will be dismissed with prejudice as to all Defendants.

### 3. Constructive Discharge (Count IV)

Count IV of the Second Amended Complaint alleges Marinkovic was subject to unlawful constructive discharge. Count IV fails as to all Defendants because Marinkovic has failed to identify any independent basis for relief under Maryland law.

19

Marinkovic alleges, in retaliation for refusing to drive an unsafe ambulance, Falck began a campaign of harassment intended to force him into an involuntary resignation.  Thus, the underlying basis for his retaliatory constructive discharge claim is based on exactly the same factual allegations as asserted in Count II under the STAA.

Maryland law recognizes the concept of constructive discharge as a basis for damages where the employee's voluntary resignation was, in actuality, an involuntary termination of employment.  Beye v. Bureau of Nat. Affairs, 477 A.2d 1197, 1203 (Md.Ct.Spec.App. 1984).  This concept can satisfy the element of an adverse employment action in a substantive claim.  Crockett v. SRA Int'l, 943 F.Supp.2d 565, 576 (D.Md. 2013) (quoting Baker v. Baxa Corp., No. 09-CV-02034, 2011 WL 650002, at *1 (D.Colo. Feb. 11, 2011)).  Where, as here, however, the plaintiff relies on the same factual allegations for both the substantive claim and the constructive discharge claim, there can be no independent basis for relief.  See Reed v. Action Products, Inc., No. 12-409-JKB, 2012 WL 2711051, at *2 (D.Md. July 6, 2012) (dismissing an independent claim for constructive discharge, where the claim merely restated the factual allegations asserted in the substantive claim).

Marinkovic suggests that the Court should permit his state tort action for constructive discharge as an alternative remedy to

his Title VII and STAA violations.[8]   This argument is misplaced.
Title VII, the STAA, and OSHA create a statutory exception to the
terminable at will doctrine.  Even assuming that public policy is
violated by discharging an employee who participates in a protected
activity under those statutes, there can be no cause of action
where the substantive claim fails.

Moreover, even assuming the existence of an independent cause
of action for constructive discharge, Marinkovic has failed to
provide sufficient facts to support such a claim.  In an action for
constructive discharge, the plaintiff has the burden to prove that
the "employer deliberately cause[d] or allow[ed] the employee's
working conditions to become 'so intolerable' that the employee is
forced into an involuntary resignation.'" Williams v. Md. Dep't of
Human Res., 764 A.2d 351, 364 (Md.Ct.Spec.App. 2000) (quoting Beye,
477 A.2d at 1201).   Here, Marinkovic complains that he was
subjected to poor working conditions, felt ostracized from his
peers, and felt unfairly discriminated against by Vasquez because
he was a male.   "[M]ere dissatisfaction with work assignments, a
feeling of being unfairly criticized, or difficult or unpleasant

---

[8]   To the extent Count IV can be interpreted to allege
constructive discharge under either OSHA or Maryland's Occupational
Safety and Health Act ("MOSHA"), the claim similarly fails because
"it is well established that a private cause of action does not
exist for a related wrongful discharge." Meadows v. Container
Research Corp., No. Y-82-3353, 1983 WL 30659, at *1 (D.Md. Apr. 27,
1983) (citing Taylor v. Brighton, 616 F.2d 256, 264 (6th Cir.
1980)).

working conditions[, however,] are not so intolerable as to compel a reasonable person to resign." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 378 (4th Cir. 2004)) (internal quotation marks omitted).  Thus, Count IV fails to state a claim on which relief can be granted and will therefore be dismissed as to all Defendants with prejudice.

### 4.   Deliberate Failure to Supervise (Count V)

Count V alleges deliberate failure to supervise as an independent action.  Marinkovic does not point to, nor is the Court aware of, any authority recognizing an independent state law tort action for deliberate failure to supervise under Maryland law.  To the extent Marinkovic attempts to support his claim by relying on case law analyzing gender based discrimination under 42 U.S.C. § 1983 (2012), Marinkovic alleges neither a deprivation of any constitutionally protected right nor that any of the Individual Defendants were acting under color of state law.  Thus, Count V fails to state a claim on which relief can be granted and will be dismissed as to all Defendants with prejudice.

### 5.   Negligent Supervision (Count VI)

Count VI of the Second Amended Complaint asserts a claim for negligent supervision.  Count VI fails as to all Defendants because claims of negligent supervision based on employment discrimination and retaliation are not actionable under Maryland common law.

"[N]egligent supervision claims 'are derived from the common law [and] may only be predicated on common law causes of action.'" Brown v. Balt. Police Dep't, No. RDB-11-00136, 2011 WL 6415366, at *15 (D.Md. Dec. 21, 2011) (alteration in the original) (quoting Hammond v. Taneytown Volunteer Fire Co., No. CCB-09-0746, 2009 WL 3347327, at *4 (D.Md. Oct. 13, 2009)). Here, Marinkovic's negligent supervision claim is based on allegations of gender discrimination and retaliation under Title VII. "[T]his Court has repeatedly disallowed negligent supervision claims appended to [discrimination claims brought under a federal or state statute]." Id. (quoting Greenan v. Bd. of Educ. of Worcester Cnty., 783 F.Supp.2d 782, 791 (D.Md. 2011)) (internal quotation marks omitted); see also Waldrop v. Sci. Applications Int'l Corp., No. AW 10-CV-0328, 2010 WL 2773571, at *3 (D.Md. July 13, 2010). Because employment discrimination is not actionable at common law in Maryland, the Court must dismiss Count VI of the Complaint as to all Defendants with prejudice.

**6. Tortious Interference with Economic Relations (Count VII)**

Count VII of the Second Amended Complaint alleges tortious interference with economic relations under Maryland common law against all of the Defendants. Count VII fails because Marinkovic has failed to plead sufficient facts that support the assertion that Vasquez, Watkins, and Oliveira were acting outside the scope of their employment.

23

Under Maryland law, the tort of intentional interference "is committed when a third party's intentional interference with another in his or her business or occupation induces a breach of an existing contract or, absent an existing contract, maliciously or wrongfully infringes upon an economic relationship." Macklin v. Robert Logan Assoc., 639 A.2d 112, 117 (Md. 1994) (emphasis added) (citing Ronald M. Sharrow, Chartered v. State Farm Mut. Auto. Ins. Co., 511 A.2d 492, 497 (Md. 1986)).   "An agent of a party to a contract, acting within the scope of the agency relationship, [] cannot interfere with the contract." Goode v. Am. Veterans, Inc., 874 F.Supp.2d 430, 447 n.12 (D.Md. 2012) (citing Bagwell v. Peninsula Reg'l Med. Ctr., 665 A.2d 297, 313 (Md.Ct.Spec.App. 1995)).

Here, Marinkovic alleges Vasquez, Watkins, and Oliveira engaged in an intentional and willful campaign of harassment to interfere with his employment at Falck.  Marinkovic simply states, in a conclusory fashion, Vasquez, Watkins, and Oliveira were acting outside the scope of their employment; however, he provides no factual basis to support this bald assertion.  Marinkovic's bald assertion amounts to nothing more than an insufficient label and conclusion.[9] Twombly, 550 U.S. at 555.  Accordingly, because Marinkovic has failed to plead sufficient facts that support the

---

[9] The Court notes that this is Marinkovic Second Amended Complaint and, therefore, his third opportunity to properly plead his claims.

assertion that Vasquez, Watkins, and Oliveira were acting outside the scope of their employment, Count VII fails to state a claim on which relief can be granted and will, therefore, be dismissed as to all Defendants without prejudice.

### 7.   Tortious Interference with Prospective Advantage (Count VIII)

Count VIII alleges tortious interference with a prospective advantage under Maryland common law against all of the Defendants. Count VIII fails because Marinkovic has failed to identify a possible future economic relationship which is likely to occur.

To establish a claim of tortious interference with a prospective advantage, a plaintiff "must identify a possible future relationship which is likely to occur, absent the interference, with specificity." Mixter v. Farmer, 81 A.3d 631, 638 (Md.Ct.Spec.App. 2013) (quoting Baron Fin. Corp. v. Natanzon, 471 F.Supp.2d 535, 546 (D.Md. 2006)) (internal quotation marks omitted). Read as generously and broadly as possible, Marinkovic alleges interference with some speculative future employment at some future time. "The tort of interference with economic relationships[, however,] 'lies where the wrongful conduct of the defendant interferes with plaintiff's existing or anticipated business relationships.'" Baron, 471 F.Supp.2d at 542 (quoting Bagwell v. Peninsula Reg'l Med. Ctr., 665 A.2d 297, 313 (Md.Ct.Spec.Ap. 1995)). "No authority suggests that a cause of action exists to recover for tortious interference with one's

occupation and livelihood in general." Id.  Marinkovic's contention that he would have succeeded in finishing school and attaining an alternate career in the absence of the alleged interference is speculative, at best, and fails to identify a future relationship which was "likely to occur."

Even if Marinkovic does properly allege a prospective economic relationship, a defendant will not be held liable for tortious interference with a prospective advantage unless the defendant intended to interfere with the prospective advantage.  See id. (discussing the elements of tortious interference with a prospective advantage).  Marinkovic simply states, in a conclusory fashion, that Vasquez, Watkins, and Oliveira acted with malicious intent to interfere with his entire medical career; however, he provides no factual basis to support this bald assertion. Marinkovic's bald assertions amount to nothing more than insufficient labels and conclusions.  Twombly, 550 U.S. at 555. Accordingly, because Marinkovic has failed to identify a possible future relationship which is likely to occur and has failed to plead sufficient facts that support the assertion that Vasquez, Watkins, and Oliveira acted with malicious intent to interfere with his entire medical career, Count VIII fails to state a claim on which relief can be granted and will, therefore, be dismissed as to all Defendants without prejudice.

### 8.   Conversion (Count IX)

Count IX alleges conversion. Count IX fails because Marinkovic has failed to assert sufficient facts to properly state a claim for conversion.

"A 'conversion' is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." Allied Inv. Corp. v. Jasen, 731 A.2d 957, 963 (Md. 1999) (quoting Interstate Ins. Co. v. Logan, 109 A.2d 904, 907 (Md. 1954)). "Wrongful deprivation of property to which another is entitled, and not merely wrongful acquisition of that property, is the essence of conversion." Nickens v. Mount Vernon Realty Grp., LLC, 54 A.3d 742, 757 (Md. 2012) (citing Darcars Motors of Silver Spring, Inc. v. Borzym, 841 A.2d 828, 836 (Md. 2004)). A defendant liable for conversion must have exerted some physical act of unlawful control with the intent merely to engage in the physical act. See Darcars, 841 A.2d at 836 (discussing the elements of conversion).

Here, Marinkovic alleges he was without his phone for hours before retrieving the phone from his shift manager in the lost and found. Further, Marinkovic alleges the sim card was removed from the phone and replaced with one that was two years old. As a result, he alleges his phone was damaged beyond repair and he spent sixteen days trying to locate a suitable replacement.

Marinkovic asserts only that his phone was gone for a few

hours and that it was damaged when he regained possession.  He fails to offer any facts that support the allegation that Vasquez, or any other Defendant, intentionally exerted any physical act of unlawful control.   To the extent he does allege Vasquez intentionally exerted physical control of his phone, he does so using insufficient labels and conclusions.  <u>Twombly</u>, 550 U.S. at 555.  Thus, he simply fails to assert sufficient facts to properly state a claim for conversion.  Accordingly, Count IX fails to state a claim on which relief can be granted and will be dismissed as to all Defendants without prejudice.

### III. CONCLUSION

For the reasons given above, Marinkovic's Motion to Amended Complaint (ECF No. 33) is GRANTED in part and DENIED in part.  The Motion is GRANTED with respect to Counts I-IX and DENIED with respect to Count X.   Marinkovic's Motion for Clerk's Entry of Default (ECF No. 26), Motion/Suggestion for Recusal (ECF No. 28), Motion to Strike Defendant Oliveira's Motion to Dismiss (ECF No. 42), and Motion to Strike Motions of Defendants (ECF No. 27) are DENIED.   The Moving Defendants' Motions to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment (ECF Nos. 17, 29), and Huntemann, Rosemond, Vasquez, and Watkins' Supplement to Motion to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment (ECF No. 23) are GRANTED.  Counts I and III are dismissed with prejudice as to all the Individual Defendants,

Counts II and IV-VI are dismissed with prejudice as to all Defendants, and Counts VII-IX are dismissed without prejudice as to all Defendants.  All Individual Defendants are DISMISSED from the case.[10]  A separate Order will follow.

Entered this 16th day of June, 2015

/s/

_____
George L. Russell, III
United States District Judge

---

[10] The only remaining Counts are Counts I and III as to Defendants Falck EMS Holdings, Inc., Falck A/S, The Lundeck Foundation, Kirkbi, and MedStar Health.  Pursuant to Federal Rule of Civil Procedure 4(m) and Local Rule 103.8.a, a defendant must be served within 120 days after the complaint is filed.  To date, the Court has no record that any of the remaining Defendants have been served.

In light of Plaintiff's indigency status, the United States Marshal shall effect service of process on the remaining Defendants.  See Fed.R.Civ.P. 4(c)(2). It does not appear, however, that Plaintiff has furnished U.S. Marshal service of process forms or summonses for the remaining Defendants.  Until Plaintiff cures this problem, service shall not be issued. The Clerk shall be directed to mail a copy of the Marshal form and summonses for each remaining Defendant to Marinkovic, who must complete and return them to the Clerk within twenty-one days from the date of the accompanying Order.  Once the forms and summonses are received, the Clerk and the U.S. Marshal are directed to take all necessary steps to effectuate service of process.

Marinkovic is forewarned that failure to effect service of process within ninety days of the date of the accompanying Order may result in dismissal without prejudice of the remaining Counts.